UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS A. DILLON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MURPHY & HOURIHANE, LLP,<br><br>　　　　Defendant. | Case No. 14-cv-01908-BLF<br><br>**ORDER**<br>**(1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION;**<br>**(2) DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br>[Re: ECF No. 10] |

　　　Before the Court is Defendant Murphy & Hourihane, LLC's ("Defendant" or "Murphy") Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, Motion for Transfer of Venue. (ECF 10) Defendant, an Illinois law firm, alleges that Plaintiff Thomas Dillon ("Plaintiff" or "Dillon"), a Receiver appointed by the Northern District of California, has not met his prima facie burden to plead that Defendant has sufficient minimum contacts to support this Court exercising personal jurisdiction over Defendant, and moves to dismiss under Federal Rule of Civil Procedure 12(b)(2). In the alternative, Defendant requests that, should this Court find personal jurisdiction, the Court transfer this case, pursuant to 28 U.S.C. § 1404(a), to the Northern District of Illinois.

　　　Having reviewed the submissions and oral argument of the parties, the Court hereby DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, finding that Defendant has sufficient minimum contacts with California to justify the exercise of jurisdiction by this Court. The Court further DENIES Defendant's Motion to Transfer Venue.

## I. BACKGROUND

### A. Procedural History

Defendant is a limited liability company, formed under Illinois law, and is a citizen of Illinois. (Compl., ECF 1 ¶ 2) Plaintiff is the court-appointed Receiver of Vesta Strategies, Inc. ("Vesta"), (Compl. ¶ 6), and is a citizen of California. (Compl. ¶ 4) Vesta is a California limited liability company with its principal place of business in Santa Clara County, California. (*Id.* ¶ 3)

Plaintiff brought its Complaint for legal malpractice, aiding and abetting breach of fiduciary duty, and fraudulent conveyance against Defendant, Vesta's former law firm, on April 24, 2014. (ECF 1) Defendant filed the instant Motion to Dismiss for Lack of Personal Jurisdiction, or, in the alternative, for Transfer of Venue ("Mot. to Dismiss") on May 20, 2014. (ECF 10) Plaintiff filed its Opposition ("Opp. to Mot. to Dismiss") on June 11, 2014. (ECF 21) Defendant replied on June 17, 2014, (ECF 23), and included with its Reply a Request for Judicial Notice ("RJN"), (ECF 24), to which Plaintiff objected on June 18, 2014. (ECF 25)

### B. Factual Allegations

This case arises out of allegations that Defendant improperly accepted $40,000 for legal services performed on behalf of Vesta. (Compl. ¶10) This $40,000 was a payout of premiums paid from Vesta's insurance carrier, United States Fire Insurance Company ("U.S. Fire"), which in 2009 rescinded two commercial crime insurance policies held by Vesta. (*Id.*) Plaintiff alleges that Defendant, in accepting this payout, committed malpractice, aided and abetted a breach of fiduciary duty, and received a fraudulent conveyance because it was not "a good faith transferee" for purposes of receiving the payment. (Compl. ¶ 65) A brief description of the legal services rendered by Defendant, and the claims for which it represented Vesta, is helpful to understand the present case.

Vesta acted as a "qualified intermediary . . . holding exchange funds deposited by clients in trust," (Compl. ¶ 7), for the purpose of conducting tax-deferred real estate exchanges, pursuant to 26 U.S.C. § 1031. (Compl. ¶¶ 19-22) Vesta's two owners, John Terzakis and Robert Estupanian, were indicted for, and pled guilty to, crimes related to the theft of exchange funds from Vesta, and are now serving prison terms. (*Id.* ¶¶ 7, 14-15) Defendant represented Vesta in litigation following

2

Vesta's collapse in June 2008, (Compl. ¶ 46; *see also* Opp. to Mot. to Dismiss at 3), and continued representing Vesta through 2009. (Opp. to Mot. to Dismiss at 5)

Vesta maintained two "enhanced" first-party commercial crime insurance policies, which were "intended to cover Vesta for the theft of exchange funds by the owners and employees of Vesta." (Opp. to Mot. to Dismiss at 2; *see also* Compl. ¶¶ 8-9) These policies, which were "loss discovery policies," were purchased from U.S. Fire, (Compl. ¶ 10), and "required notice to be given to U.S. Fire as soon as possible after discovery of the loss" so as to collect on the policy. (*Id.*) In December 2009, Plaintiff, acting as Receiver, made a claim to U.S. Fire to collect on these policies. (*Id.*)

However, Plaintiff's claim to U.S. Fire was rejected, because prior to December 2009, Murphy, acting as counsel for Vesta and Terzakis, accepted an offer from U.S. Fire to return $40,000 in the premiums it was paid by Vesta in exchange for rescission of the two insurance policies. (Opp. to Mot. to Dismiss at 8; Compl. ¶ 10) Defendant then entered into agreement with Terzakis that it would accept this $40,000 as payment for legal services rendered "because Terzakis owed it fees." (Compl. ¶ 10) Plaintiff alleges that "[o]n June 1, 2009, [Defendant] rescinded the U.S. Fire Policies on behalf of Vesta to the detriment of Vesta." (*Id*. ¶ 13)

Plaintiff brought suit against Defendant for legal malpractice, aiding and abetting breach of fiduciary duty, and fraudulent conveyance. (Compl. ¶¶ 55-65) Plaintiff contends that Defendant's act of accepting the $40,000 constituted malpractice and a breach of Defendant's fiduciary duty to its client, Vesta, because the acceptance of $40,000 "damaged Vesta by the loss of the $4 million in coverage for owner theft of Client exchange funds." (*Id*. ¶ 48)

Defendant moves this Court to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction. (ECF 10) Defendant alleges that the Court lacks general or specific jurisdiction over it. In the alternative, Defendant asks, if this Court finds jurisdiction, for the Court to transfer the case to the Northern District of Illinois. (*Id.*)

Defendant argues that it has taken no action to purposefully direct activities at California such that it would be fair or just to be subject to jurisdiction here. For this proposition, Defendant describes its lack of contact with the forum. Defendant states that it is a law firm with its "office

3

and place of business [] in Chicago, Illinois." (Mot. to Dismiss at 2; *see also* Declaration of John N. Hourihane ("Hourihane Decl."), ECF 10-1 ¶ 2) None of its lawyers "with knowledge of this matter" are admitted to practice before the California bar. (Mot. to Dismiss at 2; Hourihane Decl. ¶ 4) Defendant has never maintained an office in California. (Mot. to Dismiss at 2; Hourihane Decl. ¶ 3) Further, Defendant alleges that it "never appeared in Court on behalf of Vesta, and never made any Court filings on Vesta's behalf." (Hourihane Decl. ¶ 5) Defendant avers that no lawyers employed by Defendant traveled to California during the pendency of the representation, and that all work it did for Vesta took place in Illinois. (Mot. to Dismiss at 2) Defendant alleges that, in fact, it only drafted letters "to Vesta depositors in an attempt to secure additional time for Mr. Terzakis to sell his personal assets in order to pay back Vesta's depositors." (*Id.*)

In response, Plaintiff argues that Defendant directed its activities toward California in three ways. First, it filed declarations in two litigation matters before California courts on behalf of Vesta. Eugene Murphy, one of Defendant's named partners, filed two declarations before the Northern District of California, both executed on October 27, 2008, in which he outlined the activities his law firm undertook on Vesta's behalf to secure local counsel in California, including "spen[ding] innumerable hours interviewing firms" to serve as counsel after Vesta's prior representation withdrew from the case. (ECF 22 Exh. 10 ¶ 10) Mr. Murphy also filed a declaration before the California Superior Court in another matter, in support of Vesta's Motion to Set Aside Entry of Default. (ECF 22 Exh. 12) Second, Plaintiff contends that the letters written to Vesta creditors, including those creditors residing in California were "settlement letters," (Opp. to Mot. to Dismiss at 12), as they contained within them offers to settle the claims of Vesta creditors and included the phrase "FOR SETTLEMENT PURPOSES ONLY" in bolded lettering on the front of each letter. (*See, e.g.*, ECF 22 Exh. 14 at 1) Third, Plaintiff alleges that Defendant accepted the $40,000 in U.S. Fire insurance policy premiums in exchange for the voluntary rescission of the insurance policies, thereby preventing the money from going directly into Vesta's coffers and injuring Vesta and Vesta's exchangers in California. (Compl. ¶ 48 ("[Defendant] damaged Vesta by the loss of the $4 million in coverage . . . ."))

The Court must determine whether these representational activities, undertaken by a

1  Defendant from its location in Illinois, are sufficient to fairly exercise personal jurisdiction over
2  the Defendant here in California. The Court finds that they are, and DENIES the Motion to
3  Dismiss.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(2)

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Defendant. *See, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). If a Defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, Plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). When, as here, the motion is based on written materials, rather than an evidentiary hearing, Plaintiff "need only make *a prima facie showing* of jurisdictional facts." *Schwarzenegger*, 374 F.3d 797, 800 (emphasis added). "Uncontroverted allegations in the complaint must be taken as true," *id.* at 800, though Plaintiff cannot "simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Conflicts between facts contained within the declarations or affidavits submitted by the parties are resolved *in the plaintiff's favor* for purposes of plaintiff's prima facie case. *See, e.g.*, *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 861-62 (9th Cir. 2003).

Federal courts, in the absence of a specific statutory provision conferring jurisdiction, apply the personal jurisdiction laws of the state in which they sit. California's long-arm jurisdictional statute is "coextensive with federal due process requirements." *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). To exercise jurisdiction over a non-resident defendant, the defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be either general or specific, *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984), though Plaintiff argues only that Defendant is subject to specific jurisdiction in California. (*See, e.g.*, Opp. to Mot. to Dismiss at 10)

### B. Request for Judicial Notice ("RJN")

Defendant requests the Court take judicial notice of an order issued March 26, 2014 in *Dillon v. Continental Casualty Co.*, Case No. 5:10-cv-05238-EJD ("Order Granting Continental's Motion for Summary Judgment; Denying Dillon's Motion for Summary Judgment as Moot"). (ECF 24) Plaintiff objects to this Request on the grounds that the judge's "order was in error because the court failed to consider the effect of the subrogation clauses contained in the Continental policies." (Obj. to RJN, ECF 25 at 1)

A court "may judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). Judicially noticed facts include "matters of public record, such as prior court proceedings." *U.S. v. So. Cal. Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004). "While a court may take judicial notice of a judicial or administrative proceeding which has a 'direct relation to the matters at issue,'" it can only take notice of "the *existence* of those matters of public record . . . but not the *veracity* of the arguments and disputed facts contained therein." *Id.* (citing *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)) (emphasis in original)). Thus, Plaintiff's Objection to the Court taking judicial notice of the Order, because the legal reasoning contained with it is allegedly incorrect, is misguided – the Court will not be taking notice of the legal reasoning contained therein, but rather the fact that a court within this district has filed an order that contains such legal reasoning. *Cf. Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (permitting a court to take judicial notice of another court's opinion, but not the truth of the facts recited therein).

Thus, the Court takes judicial notice of the Order Granting Continental's Motion for Summary Judgment, pursuant to Federal Rule of Evidence 201.

### III. DISCUSSION

#### A. Personal Jurisdiction

The "mere act of agreeing to represent (and then representing) an out-of-state client, without more, does not suffice to demonstrate voluntary purposeful availment" for purposes of personal jurisdiction in the *client's* home state. *King v. Ridenour*, 749 F. Supp. 2d 648, 655 (E.D. Mich. 2010); *see also Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990) ("Out-of-state legal

6

1 representation does not establish purposeful availment of the privilege of conducting activities in
2 the forum state, where the law firm is solicited in its home state and takes no affirmative action to
3 promote business within the forum state.")

Because Plaintiff does not allege that Defendant is subject to general jurisdiction in California, the Court considers only whether Defendant is subject to specific jurisdiction. The Ninth Circuit Court of Appeals has established a three-prong test for determining whether a non-resident Defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

When a case sounds in tort, as this one does, the Court is concerned with whether the defendant has "purposefully directed" its activities at the forum state. This is distinct from the analysis for cases sounding in contract, where the court looks to "purposeful availment." *Schwarzenegger*, 374 F.3d 797, 802-04. Plaintiff bears the burden of proof with regard to the first two elements. *Sher v. Johnson*, 911 F.2d 1357, 1361 (1990). If Plaintiff satisfies the first two elements in *Schwarzenegger*, the burden shifts to Defendant to "present a compelling case" that exercising jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

For the reasons outlined below, the Court finds that Plaintiff has met its prima facie burden to show that Defendant is subject to the personal jurisdiction of this Court.

### 1. Purposeful Direction

Purposeful direction requires a showing that "[D]efendant's actions outside the forum state [] are directed at the forum." *Schwarzenegger*, 374 F.3d 797, 802-03. This requires the Court to engage in a three-part "effects" test, first articulated in *Calder v. Jones*, 465 U.S. 783 (1984),

7

which entails that Defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*). Failing to sufficiently plead any single prong of this test is fatal to a plaintiff's claims. *Cf. Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010). The contacts that constitute purposeful direction "must be the ones that give rise to the current suit." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

Plaintiff has submitted evidence to the Court that establishes that Defendant has had intentional, substantial, and continuing contact with California over the course of two years. Commencing in 2008, Defendant served as counsel to Vesta, a California corporation, rendering legal advice to the company through at least June 2009 (*See* ECF 22 Exh. 12 ¶ 1 ("Murphy & Hourihane, L.L.C., . . . local Illinois counsel for Defendant Vesta Strategies, LLC.")) Although located in Illinois, all of Defendant's legal work has been for the benefit of this California company. (*See, e.g.*, Dillon Decl., ECF 22 Exhs. 13-15 (letters sent from Defendant to unfunded exchangers in an attempt to settle claims the exchangers had against Vesta)) Defendant has received fees from its services performed for Vesta, including the disputed $40,000 payment at issue in the present lawsuit, (*see* Hourihane Decl., ECF 10-1 Exh. B), money that otherwise would have been paid into Vesta's coffers.

The Court finds that Plaintiff has met its prima facie burden with regard to the three prongs of the *Calder* test, and discusses each of these three prongs in turn below.

### i. Intentional Act

As to the first prong, Defendant undertook the intentional act of representing Vesta in litigation. Defendant does not dispute that it served as counsel to Vesta.

### ii. Express Aim

Defendant contends that its conduct does not meet the second prong of the *Calder* test, because "[t]here is no evidence that [Defendant] committed an intentional act that was expressly aimed at California." (Mot. to Dismiss, ECF 10 at 7) Seemingly confusing its duties for Vesta with its contact with Mr. Terzakis, Vesta's majority shareholder, Defendant argues that its work was all

related to advising Mr. Terzakis in Illinois. (*Id.*) Defendant's own sworn statements, however, contradict this position.

Defendant has injected itself into two California lawsuits, in one case representing Vesta for a period of time, and in both suits volunteering to be a witness by filing declarations. (*See* Dillon Decl., ECF 22 Exhs. 10, 12) The first case, *Vesta Strategies v. Estupinian*, Case No. C-07-06216-JW, was filed in this court. The second case, *Tesoro Coast, LLC v. Vesta Strategies*, Case No. 30-2008-00108304, was filed in California Superior Court in Orange County, California. Defendant participated in both of these cases in an effort to persuade California courts to rule in favor of Vesta's requests for relief from default.

In *Vesta Strategies v. Estupinian*, Eugene Murphy, a named partner of Defendant, submitted a declaration in support of Vesta's motion to set aside entry of default judgment. (*See* ECF 22 Exh. 10) In that declaration, Mr. Murphy outlined the substantial efforts he undertook for Defendant in order to assist Vesta in defending itself from suit and in finding suitable counsel. (*Id.* ¶ 10 ("I spent innumerable hours interviewing firms qualified to handle the large number of cases filed for and against Mr. Terzakis and Vesta.")) In the *Tesoro Coast* case, Mr. Murphy again submitted a declaration, in which he accepted full responsibility for Vesta's failure to file a responsive pleading. (ECF 22 Exh. 12) In fact, Mr. Murphy states in that declaration that "[m]y firm was retained to represent Mr. Terzakis' *and Vesta's interests* in the actions in which Mr. Terzakis and/or Vesta were parties, and to assist with finding local counsel in California for this and numerous other matters." (*Id.* ¶ 4 (emphasis added)) Mr. Murphy goes on to say in this declaration that "I did not, however, file or cause to be filed a response to the Complaint in this matter." (*Id.* ¶ 7) The recognition in these two declarations of Defendant's role as counsel for Vesta, in litigation in California, shows that Defendant's conduct was expressly aimed at California.

In addition to these declarations, Defendant also participated forcefully in settlement negotiations, on behalf of Vesta, with a number of California residents who claimed they lost significant amounts of money when Vesta was looted by Terzakis and Estupinian. Defendant sent strongly worded, almost threatening, settlement letters to California residents seeking monetary

settlement of their claims against Vesta, and indicated that such settlements would be rescinded if the claimants filed civil suits or contacted law enforcement authorities regarding their losses. (*See* Dillon Decl., ECF 22 Exh. 13 ("This letter summarizes and sets forth our client's proposal to resolve your claim relating to Vesta Strategies, L.L.C."); Exh. 14 ("This letter is an update to our previous communications regarding *our clients' proposal* to resolve your claim relating to Vesta Strategies, L.L.C. and John Terzakis.") (emphasis added); Exh. 15 ("In an effort to resolve all matters *between yourself and Vesta Strategies* and all other related matters, we hereby propose the following.") (emphasis added))

### iii. Causing Harm Likely to be Suffered in the Forum State

As to the third prong, Defendant "caused harm that the defendant knows is likely to be suffered in the forum state." *Dole Food*, 303 F.3d 1104, 1111. After receiving U.S. Fire's May 28, 2009 letter rescinding the insurance policies, Defendant sent a responsive letter on June 1, 2009. (Hourihane Decl., ECF 10-1 Exh. B) In this letter, Defendant instructs U.S. Fire to pay out its refund of the insurance policy premiums *directly to Defendant*. (*Id.* ("Enclosed with this letter is a letter of direction from Vesta accepting the rescission of and refund of the policy premiums for the subject policies. Pursuant to Vesta's instructions, the refund may be paid by check payable to 'Murphy & Hourihane, L.L.C.'")) This document makes a prima facie showing that Defendant, despite knowing that Vesta was suffering from low funds as a looted company, intercepted $40,000 that otherwise would have been paid out directly to Vesta. The Court finds that Defendant would have "known it likely" that this act would have caused harm likely to be suffered by its California client, *see Dole Food*, 303 F.3d 1104, 1111, and the unfunded exchangers, many of whom are California residents.

This Court is mindful that the Ninth Circuit, in *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), has held that out-of-state legal representation does not, in-and-of-itself, establish purposeful availment of the privilege of conducting business in the forum state. *Sher*, 911 F.2d 1357, 1363. However, the evidence in this case shows far more than mere out-of-state legal representation conducted by Defendant. In *Sher*, Florida attorneys, representing a California client in litigation before a Florida court, sent letters and bills to California, and traveled to the state several times to

meet their client. *Id.* However, these acts, standing alone, were not enough for personal jurisdiction over the out-of-state lawyers. It was only after the lawyers obtained a deed of trust on California real property, in order to secure payment of their legal bills, that the lawyers "invoked the benefits and protections of the laws of California for the purposes of jurisdiction." *Id.* at 1364 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 479).

In this case, Defendant was providing legal services to a California company in courts *in California*, not an out-of-state forum. Its representation of Vesta in at least one state court case, its submission of declarations to two California courts stating that it was counsel to Vesta, and its interception of the $40,000 paid to Vesta as reimbursement for the cancelled insurance policies, all establish personal jurisdiction. The Court believes that this case is analogous to *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310 (9th Cir. 1987), in which the Ninth Circuit found that a Kansas accountant, engaged in providing accounting services to a California medical practice, was properly subject to jurisdiction in California because of his "ongoing performance of accounting services for a California enterprise." *Palka*, 823 F.2d 310, 314. Here, Defendant chose to render ongoing services to a California corporation, providing legal counsel and assistance in various litigation and settlement matters, such that it could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Court finds that Plaintiff has made a prima facie showing of the elements of the three-factor *Calder* test.

### 2. Arising Out of Forum-Related Activities

The second prong of the specific jurisdiction requires that the "claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision Int'l, Inc. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Here, Plaintiff's claims clearly arise out of Defendant's forum related activities. Plaintiff alleges that Defendant wrongly took $40,000 as payment for outstanding bills from the money remitted by U.S. Fire. There can be no question that Defendant intercepted this sum as payment for its own fees at a time when it was fully aware that the two principals of Vesta, Terzakis and Estupinian, had been charged with looting Vesta of tens of millions of dollars, causing Vesta to be sued by many of its clients and making Vesta unable to

1  meet its financial obligations. (*See, e.g.*, Hourihane Decl. Exh. A (Letter from U.S. Fire); *see also*
2  Mot. to Dismiss at 7-8 ("Defendant intended to assist Mr. Terzakis from Illinois with the sale of
3  his assets in order to pay back the money stolen from Vesta."))

4      The receipt of these funds arises out of Defendant's continued representation of Vesta,
5  including in litigation before California courts, and had the effect of injuring Vesta in California.
6  As such, Plaintiff has made a prima facie showing of the second prong of the *Schwarzenegger* test.

### 3. The Exercise of Jurisdiction Would Be Reasonable

8      Defendant bears the burden, after Plaintiff has made a showing of the first two prongs of
9  the *Schwarzenegger* test, of proving that the exercise of jurisdiction by the Court would be
10  unreasonable. Courts in the Ninth Circuit consider a seven-factor balancing test when addressing
11  the question of reasonableness:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

16  *Panavision*, 141 F.3d 1316, 1323 (citing *Burger King*, 471 U.S. 462, 476-77). The Court considers
17  each of these factors in turn, and finds that Defendant has not met its burden to prove that the
18  exercise of jurisdiction would be unreasonable.

### i. Purposeful Interjection

20      Even if a court finds sufficient interjection into the forum state to satisfy the test for
21  purposeful availment, "the degree of interjection is a factor to be weighed in assessing the overall
22  reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d 1316, 1323.
23  In *Panavision*, the Court found that the out-of-state registration of a trademark, "knowing that [it]
24  would likely injure Panavision in California," and the sending of a settlement demand letter to
25  California, weighed "strongly in favor" of the exercise of personal jurisdiction. In the instant case,
26  the degree of interjection by Defendant is even stronger: Defendant sent numerous settlement
27  letters to Vesta's unfunded exchangers in California, filed declarations in multiple California
28  courts, and intercepted money that otherwise would have been deposited in the coffers of a

California corporation. These interjections are extensive, and weigh heavily in favor of the exercise of jurisdiction.

### ii. Defendant's Burden

In weighing a defendant's burden in litigating in the forum, unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995). In *Panavision*, the court held that there was a "significant" burden on an individual living in Illinois having to litigate in California, but that such a burden was not constitutionally unreasonable given technological advances in travel and communications. 131 F.3d 1316, 1323. Defendant argues that their burden will be particularly great, due to "the rigorous litigation schedules that they must uphold in Illinois," (Mot. to Dismiss at 10), but articulates no reason why such a burden would be so great as to deprive them of due process.

### iii. Sovereignty

The sovereignty analysis "concerns the extent to which the exercise of jurisdiction would conflict with the sovereignty" of Illinois. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Defendant provides no argument as to how the exercise of jurisdiction by a California court in this matter would impinge upon the sovereignty of Illinois, and this Court does not find any conflict of law that would be implicated by the exercise of jurisdiction in California in this case.

### iv. Forum State's Interest

Defendant argues that California "does not have an interest in adjudicating this dispute." (Mot. to Dismiss at 10) However, the Ninth Circuit has held that "California has an interest in protecting its citizens against legal malpractice, regardless of where the malpractice occurs." *Sher*, 911 F.2d 1357, 1364-65 (finding that both California and Florida had an interest in a malpractice action concerning a Florida-based law firm and California resident in litigation before Florida courts). Though Illinois undoubtedly has an interest in the actions taken by lawyers admitted to its bar, California's interest in protecting its citizens from malpractice is similarly compelling.

13

#### v. Efficient Resolution

This factor "focuses on the location of the evidence and witnesses," but is "no longer weighed heavily given the modern advances in communication and transportation." *Caruth*, 59 F.3d 126, 129. Though Defendant's "attorneys, employees, and documents are located in Illinois, and any third-party witnesses from U.S. Fire are likely located in New Jersey," (Mot. to Dismiss at 11), Vesta contends that its files and witnesses are located in California, (Opp. to Mot. to Dismiss at 16), as is the Plaintiff, who was appointed as Receiver by this court. (*See, e.g.*, *id.* at 17) The Court finds that California is an efficient forum in which to litigate the matter.

#### vi. Convenient and Effective Relief for Plaintiff

Courts "give[] little weight to the plaintiff's inconvenience" when evaluating the convenience and effectiveness of relief. *Panavision*, 141 F.3d 1316, 1324 (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476). However, convenience as a factor augurs in favor of retaining this case in California, as Plaintiff was appointed Receiver here and resides here.

#### vii. Existence of Alternative Forum

Plaintiff does not dispute that he could have brought this case in Illinois court. (Opp. to Mot. to Dismiss at 18). That an alternative forum exists weighs in favor of Defendant's Motion. *See Panavision*, 141 F.3d 1316, 1324.

Ultimately, most of the seven *Panavision* factors weigh in favor of maintaining jurisdiction in California. Defendant has not met its burden to show that the exercise of jurisdiction by California would be unreasonable. The Court finds that exercising jurisdiction in this case comports with "fair play and substantial justice," *Burger King*, 471 U.S. 462, 476, and as such DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

### B. Transfer

Defendant asks the Court, in the event that it denies the motion to dismiss, to transfer the action to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) grants a court broad discretion to transfer an action "to any other district or division where it might have been brought . . . for the convenience of parties and witnesses . . . and in the interest of justice." Normally, however, courts award "great weight" to a Plaintiff's choice of forum. *See, e.g.*, *Lou v.*

*Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). The Defendant bears the burden of proving that the alternative state is a "more appropriate forum for the action." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

In adjudicating a Motion to Transfer Venue, the Court engages in a two-part analysis. First, the Court must determine if the action could have been brought in the venue to which transfer is sought. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). In this case, both parties agree that the case could have been brought in the Northern District of Illinois. (*See* Opp. to Mot. to Dismiss at 18 ("Dillon concedes that he could have sued [Defendant] in Illinois.")) Second, the Court must consider three factors: "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice." *Kasey v. Molybdenum Corp.*, 408 F.2d 16, 20 (9th Cir. 1969).

### 1. Convenience of the Parties

The Court finds that the present forum best serves the convenience of the parties. Plaintiff is resident here, and was appointed Receiver by the court here. Vesta has its principal place of business in this district. Defendant, though resident in Illinois, has filed papers with the courts in this district before. (*See* Dillon Decl., ECF 22 Exh. 10) The Court does not doubt that it would be more convenient for Defendant to litigate in Illinois. The Court must, however, balance the possible increase in costs facing Defendant if forced to litigate in California against the decrease in costs for it, but increase in costs facing Plaintiff, if the case were transferred. *See Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 124 n.5 (S.D. Tex 1971) (finding that costs that must be borne by the parties "directly bears upon the convenience of the parties"). An additional concern for the Court is that Plaintiff, as Receiver, has an obligation not to waste estate assets, and states that he brought suit in California "because litigation here will save the estate money." (Opp. to Mot. to Dismiss at 18-19). Further, any depositions of Defendant's attorneys would need to take place in Illinois, as conceded by Plaintiff, (*Id.* at 19 ("Dillon will have to depose Murphy & Hourihane personnel in Chicago.")), the increase in costs related to traveling back and forth between jurisdictions are costs that would have to be borne by *either* party, whether the case remains in this venue or is transferred. As such, the Court does not find any substantial increase in

costs facing Defendant so as to support transfer.

### 2. Convenience of the Witnesses

The convenience of witnesses "is said to be the most important factor in passing on a transfer motion." *Los Angeles Mem. Coliseum Commission v. NFL*, 89 F.R.D. 497, 501 (1981) (citing 15 Wright, Miller & Cooper at 264 ("If the forum chosen by plaintiff will be the most convenient for the witnesses, this is a powerful argument against transfer.")).

Both parties agree that some critical witnesses – including employees of U.S. Fire – are likely not resident in either Illinois or California. However, the number of witnesses in California weighs strongly in favor of keeping the litigation here. Plaintiff describes several groups of witnesses resident in California, including: "non-wrongdoing employees" of Vesta, Mr. Estupanian's wife, and Peter Ye, a former employee who is currently incarcerated. (Opp. to Mot. to Dismiss at 19) Defendant points to no witnesses, apart from its own employees, that are resident in Illinois. (*See, e.g.*, Mot. to Dismiss at 15) The Court believes it will be more convenient for the greatest number of witnesses were the litigation to remain in California.

### 3. Interest of Justice

In determining whether a transfer is in the interest of justice, courts consider a wide variety of factors. The Ninth Circuit has articulated eight factors that a court may choose to consider in making this determination:

> (1) [T]he location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). In assessing the various *Jones* factors, "no single factor is dispositive." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In the instant case, only one factor weighs strongly in favor of transfer: that the agreements between Defendant and Terzakis were negotiated in Illinois. (*See* Hourihane Decl., ECF 10-1 ¶

16

10) However, the remaining *Jones* factors are either neutral to the question of transfer, or weigh in favor of retaining the litigation in California. First, as Plaintiff argues, its claims against Defendant sound in California Insurance law, (Opp. to Mot. to Dismiss at 18), specifically California Insurance Code § 533, about which California courts will have greater familiarity than will Illinois courts. Second, Plaintiff elected to bring suit in California, not Illinois. Third, both parties have contacts with California as a forum, both generally and with regard to the causes of action in this suit: Plaintiff is the court-appointed Receiver and resident in California, while Defendant provided legal services for a California client, including before California courts. Defendant argues that it has "no contacts with California," (Mot. to Dismiss at 14), but this claim is simply not believable considering the evidence before the Court. Given that Plaintiff lacks contacts with Illinois, that both parties have substantial contacts with California augurs in favor of retaining the case in the present forum. Fourth, though Defendant argues that its costs will be heavier to litigate in California than they would be in Illinois, (Mot. to Dismiss at 15), the converse is true for Plaintiff – Plaintiff's costs will be higher if litigating in Illinois than they would be in California. Additionally, as court-appointed Receiver, Plaintiff has an obligation to not "waste . . . estate assets," (Opp. to Mot. to Dismiss at 18), which encourages the Court to permit suit in the more cost-effective forum. Fifth, Defendant agrees that compulsory process is "[e]qually [a]vailable in Illinois." (Mot to Dismiss at 15) Sixth, and finally, the Court believes that neither state affords a greater access to sources of proof. Though Defendant is resident in Illinois, it concedes that other witnesses are disbursed throughout the country (Vesta depositors) or likely to be resident in New Jersey (U.S. Fire employees). (*Id.*) Plaintiff's witnesses, including at least two of Vesta's former employees, are resident in California. (Opp. to Mot. to Dismiss at 19)

Having considered the *Jones* factors, the Court finds that only one of the eight factors weighs in favor of transferred in the case to Illinois, while the remaining factors weigh in favor of retaining the case in California, or are neutral.

Defendant has not met its burden to prove that Illinois is a more appropriate forum than California for the adjudication of this dispute. Rather, it has simply shown that Illinois is an *additional* appropriate forum. This is not enough for the Court to override the Plaintiff's choice of

California as a forum for the litigation, and as such the Court DENIES Defendant's Motion for Transfer of Venue.

## IV. ORDER

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. The Court also DENIES Defendant's Motion for Transfer of Venue.

**IT IS SO ORDERED.**

Dated: July 3, 2014

_____
HON. BETH LABSON FREEMAN
United States District Judge