UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS A. DILLON,<br><br>Plaintiff,<br><br>v.<br><br>MURPHY & HOURIHANE, LLP,<br><br>Defendant. | Case No.  14-cv-01908-BLF<br><br>**ORDER AS AMENDED FOLLOWING RECONSIDERATION: (1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; (2) DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br>[Re:  ECF Nos. 10, 28] |

On July 3, 2014, this Court denied Defendant Murphy & Hourihane, LLP's Motion to Dismiss for lack of personal jurisdiction and its Motion, in the alternative, to transfer venue to the Northern District of Illinois. On July 30, 2014, Defendant filed with this Court a Motion, pursuant to 28 U.S.C. § 1292(b), to amend the Court's July 3 Order, requesting that this Court certify the Order Denying Defendant's Motion to Dismiss for interlocutory review by the Ninth Circuit Court of Appeals. Defendant contends in this Motion to Certify that the Court relied on Ninth Circuit case law on personal jurisdiction that had be "called into question, and indeed repudiated in part" by a recent, unanimous Supreme Court decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). (*See* Mot. to Certify at 1)

Based on the argument raised in the Motion to Certify, the Court *sua sponte* requested supplemental briefing on whether the Court should reconsider its prior Order due to the absence of any analysis of the issues presented in *Walden*. *See* ECF 31.[1] Having considered that briefing, the

---

[1] In its Motion to Certify, Defendant noted that, "but for the threat of sanctions" in Local Rule 7-9(c), prohibiting in a motion for reconsideration the repetition of any argument previously raised, it would have moved the Court to reconsider its prior Order. (Mot. to Certify at 12 n.2) Although not identified or argued in its briefs, defense counsel mentioned *Walden* at the outset of oral

United States District Court
Northern District of California

1    Court hereby determines that reconsideration is appropriate and, pursuant to its inherent power to

2    reconsider interlocutory orders prior to the entry of judgment, the Court issues this Order

3    GRANTING reconsideration and MODIFYING its July 3, 2014 Order. *See, e.g.*, *Meas v. City &*

4    *Cnty. of San Francisco*, 681 F. Supp. 2d 1128, 1143 (N.D. Cal. 2010) ("[T]he trial court has the

5    inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of

6    a final judgment.").

7            This Order hereby SUPERSEDES AND REPLACES the Court's July 3, 2014 Order. The

8    Court DENIES Defendant's Motion to Dismiss for lack of personal jurisdiction and DENIES

9    Defendant's Motion to Transfer Venue.

10   **I.       BACKGROUND**

11           **A.       Procedural History**

12           Murphy & Hourihane, LLP is a law firm organized as a limited liability company, formed

13   under Illinois law, and is a citizen of Illinois. (Compl., ECF 1 ¶ 2) Plaintiff is the court-appointed

14   Receiver of Vesta Strategies, Inc. ("Vesta") (Compl. ¶ 6), and is a citizen of California. (Compl. ¶

15   4) Vesta is a California limited liability company with its principal place of business in Santa

16   Clara County, California. (*Id.* ¶ 3)

17           Plaintiff brought its Complaint for legal malpractice, aiding and abetting breach of

18   fiduciary duty, and fraudulent conveyance against Defendant, Vesta's former law firm, on April

19   24, 2014. (ECF 1) Defendant filed the instant Motion to Dismiss for Lack of Personal Jurisdiction,

20   or, in the alternative, for Transfer of Venue ("Mot. to Dismiss") on May 20, 2014. (ECF 10)

21   Plaintiff filed its Opposition ("Opp. to Mot. to Dismiss") on June 11, 2014. (ECF 21) Defendant

22   replied on June 17, 2014, (ECF 23), and included with its Reply a Request for Judicial Notice

23   ("RJN"), (ECF 24), to which Plaintiff objected on June 18, 2014. (ECF 25)

24           **B.       Factual Allegations**

25           This case arises out of allegations that Defendant improperly approved rescission of two

26

27   argument, thus technically depriving Defendant of the opportunity to seek reconsideration on that

28   issue. *See* Civil L.R. 7-9(c) ("No motion for leave to file a motion for reconsideration may repeat
     any oral or written argument made by the applying party.").

United States District Court
Northern District of California

Vesta insurance policies, and wrongfully accepted $40,000 in payment for legal services performed on behalf of one of Vesta's owners, John Terzakis. (Compl. ¶10) This $40,000 was a reimbursement of premiums paid to Vesta's insurance carrier, United States Fire Insurance Company ("U.S. Fire"), which in June 2009, upon receipt of a letter from Defendant as counsel for Vesta, rescinded two commercial crime insurance policies held by Vesta. (*Id.*; *see also* Compl. Exh. 3 at 1 (Letter from John N. Hourihane to U.S. Fire (reading, in pertinent part: "We represent Vesta Strategies . . . . Enclosed with this letter is a letter of direction from Vesta accepting the rescission of and refund of the policy premiums for the subject policies. Pursuant to Vesta's instructions, the refund may be paid by check payable to 'Murphy & Hourihane, LLC.'") Plaintiff alleges that Defendant, by facilitating the rescission and accepting this payout, committed malpractice, aided and abetted a breach of fiduciary duty, and received a fraudulent conveyance because it was not "a good faith transferee" for purposes of receiving the payment. (Compl. ¶ 65)

Vesta acted as a § 1031 "qualified intermediary . . . holding exchange funds deposited by clients in trust," (Compl. ¶ 7), for the purpose of conducting tax-deferred real estate exchanges, pursuant to 26 U.S.C. § 1031. (Compl. ¶¶ 19-22) Vesta's two owners, John Terzakis and Robert Estupanian, were indicted for, and pled guilty to, crimes related to the theft of exchange funds from Vesta, and are now serving prison terms. (*Id.* ¶¶ 7, 14-15) Defendant was engaged in order to represent Vesta's interests in RICO litigation, and to defend Vesta against claims by exchangers with failed exchanges. (*Id.* ¶¶ 45, 46) Defendant had knowledge that exchange funds were missing from Vesta and that each owner was accusing the other of theft. (*Id.* ¶ 45) During this time, Terzakis owed Defendant legal fees from other legal services it had rendered. (*Id.* ¶ 46)

Vesta maintained two "enhanced" first-party commercial crime insurance policies, which were "intended to cover Vesta for the theft of exchange funds by the owners and employees of Vesta." (Opp. to Mot. to Dismiss at 2; *see also* Compl. ¶¶ 8-9) The insurance contracts, which were entered into in California (*id.* ¶ 3), were "loss discovery policies" purchased from U.S. Fire. (*Id.* ¶ 10) The policies "required notice to be given to U.S. Fire as soon as possible after discovery of the loss" so as to collect on the policy. (*Id.*) In December 2009, Plaintiff, acting as Receiver, made a claim to U.S. Fire to collect on these policies. (*Id.*)

1    However, Plaintiff's claim to U.S. Fire was rejected because on June 1, 2009, Mr.

2    Hourihane, acting as counsel for Vesta, had accepted an offer from U.S. Fire to return $40,000 in

3    the premiums it was paid by Vesta in exchange for rescission of the two insurance policies. (*See*

4    Compl. Exh. 3)

5    Plaintiff brought suit against Defendant for legal malpractice, aiding and abetting breach of

6    fiduciary duty, and fraudulent conveyance. (Compl. ¶¶ 55-65) Plaintiff contends that Defendant's

7    act of agreeing on Vesta's behalf to rescission of the insurance contracts and personally accepting

8    the $40,000 as payment of fees owed by Terzakis constituted malpractice and a breach of

9    Defendant's fiduciary duty to its client, Vesta, because the rescission and acceptance of $40,000

10   "damaged Vesta by the loss of the $4 million in coverage for owner theft of Client exchange

11   funds." (*Id.* ¶ 48)

12   Defendant moves this Court to dismiss, pursuant to Federal Rule of Civil Procedure

13   12(b)(2), for lack of personal jurisdiction. (ECF 10) Defendant alleges that the Court lacks general

14   or specific jurisdiction over it. In the alternative, Defendant asks, if this Court finds jurisdiction,

15   for the Court to transfer the case to the Northern District of Illinois. (*Id.*)

16   Defendant argues that it has taken no action to purposefully direct activities at California

17   such that it would be fair or just to be subject to jurisdiction here. For this proposition, Defendant

18   describes its lack of contact with the forum. Defendant states that it is a law firm with its "office

19   and place of business [] in Chicago, Illinois." (Mot. to Dismiss at 2; *see also* Declaration of John

20   N. Hourihane ("Hourihane Decl."), ECF 10-1 ¶ 2) None of its lawyers "with knowledge of this

21   matter" are admitted to practice before the California bar. (Mot. to Dismiss at 2; *see also*

22   Hourihane Decl. ¶ 4) Defendant has never maintained an office in California. (Mot. to Dismiss at

23   2; Hourihane Decl. ¶ 3) Further, Defendant alleges that it "never appeared in Court on behalf of

24   Vesta, and never made any Court filings on Vesta's behalf." (Hourihane Decl. ¶ 5) Defendant

25   avers that no lawyers employed by Defendant traveled to California during the pendency of the

26   representation, and that all work it did for Vesta took place in Illinois. (*Id.* ¶ 6) Defendant alleges

27   that, in fact, it only drafted letters "to Vesta depositors in an attempt to secure additional time for

28   Mr. Terzakis to sell his personal assets in order to pay back Vesta's depositors." (*Id.* ¶ 7)

United States District Court
Northern District of California

4

1   In response, Plaintiff argues that Defendant directed its activities toward California in three

2   ways. First, it filed declarations in two litigation matters before California courts on behalf of

3   Vesta. Eugene Murphy, one of Defendant's named partners, filed two declarations before the

4   Northern District of California, both executed on October 27, 2008, in which he outlined the

5   activities his law firm undertook on Vesta's behalf to secure local counsel in California, including

6   "spen[ding] innumerable hours interviewing firms" to serve as counsel after Vesta's prior

7   representation withdrew from the case. (ECF 22 Exh. 10 ¶ 10) Mr. Murphy also filed a declaration

8   before the California Superior Court in another matter, in support of Vesta's Motion to Set Aside

9   Entry of Default. (ECF 22 Exh. 12) Second, Plaintiff contends that the letters written to Vesta

10  creditors, including those creditors residing in California, were settlement letters, as they

11  contained within them offers to settle the claims of Vesta creditors and included the phrase "FOR

12  SETTLEMENT PURPOSES ONLY" in bolded lettering on the front of each letter. (*See, e.g.*, ECF

13  22 Exh. 14 at 1) Third, Plaintiff alleges that Defendant accepted the $40,000 in U.S. Fire insurance

14  policy premiums in exchange for the voluntary rescission of the insurance policies, thereby

15  preventing the money from going directly into Vesta's coffers and injuring Vesta and Vesta's

16  exchangers in California. (Compl. ¶ 48 ("[Defendant] damaged Vesta by the loss of the $4 million

17  in coverage . . . ."))

18      The Court must determine whether these representational activities, undertaken by a

19  Defendant from its location in Illinois, are sufficient to fairly exercise personal jurisdiction over

20  the Defendant here in California. The Court finds that they are, and DENIES the Motion to

21  Dismiss.

22  **II.     LEGAL STANDARDS**

23      **A.     Rule 12(b)(2)**

24      Plaintiff bears the burden of establishing that the Court has personal jurisdiction over

25  Defendant. *See, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir.

26  2004). If a Defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction,

27  Plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal

28  jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). When, as here, the motion is

1   based on written materials, rather than an evidentiary hearing, Plaintiff "need only make *a prima*

2   *facie showing* of jurisdictional facts." *Schwarzenegger*, 374 F.3d 797, 800 (emphasis added).

3   "Uncontroverted allegations in the complaint must be taken as true," *id.* at 800, though Plaintiff

4   cannot "simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l,*

5   *Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Conflicts between facts contained within the declarations

6   or affidavits submitted by the parties are resolved *in the plaintiff's favor* for purposes of plaintiff's

7   prima facie case. *See, e.g.*, *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 861-62 (9th

8   Cir. 2003).

9        Federal courts, in the absence of a specific statutory provision conferring jurisdiction,

10  apply the personal jurisdiction laws of the state in which they sit. California's long-arm

11  jurisdictional statute is "coextensive with federal due process requirements." *Panavision Int'l, LP*

12  *v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). To exercise jurisdiction over a non-resident

13  defendant, the defendant must have "minimum contacts" with the forum state such that the

14  exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."

15  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be either general or

16  specific, *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984),

17  though Plaintiff argues only that Defendant is subject to specific jurisdiction in California. (*See,*

18  *e.g.*, Opp. to Mot. to Dismiss at 10)

19        **B.        Request for Judicial Notice ("RJN")**

20        Defendant requests the Court take judicial notice of an order issued March 26, 2014 in

21  *Dillon v. Continental Casualty Co.*, Case No. 5:10-cv-05238-EJD ("Order Granting Continental's

22  Motion for Summary Judgment; Denying Dillon's Motion for Summary Judgment as Moot").

23  (ECF 24) Plaintiff objects to this Request on the grounds that the judge's "order was in error

24  because the court failed to consider the effect of the subrogation clauses contained in the

25  Continental policies." (Obj. to RJN, ECF 25 at 1)

26        A court "may judicially notice a fact that is not subject to reasonable dispute." Fed. R.

27  Evid. 201(b). Judicially noticed facts include "matters of public record, such as prior court

28  proceedings." *U.S. v. So. Cal. Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004).  "While a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    court may take judicial notice of a judicial or administrative proceeding which has a 'direct

2    relation to the matters at issue,'" it can only take notice of "the *existence* of those matters of public

3    record . . . but not the *veracity* of the arguments and disputed facts contained therein." *Id.* (citing

4    *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.

5    1992)) (emphasis in original)). Thus, Plaintiff's Objection to the Court taking judicial notice of the

6    Order, because the legal reasoning contained with it is allegedly incorrect, is misguided – the

7    Court will not be taking notice of the legal reasoning contained therein, but rather the fact that a

8    court within this district has filed an order that contains such legal reasoning. *Cf. Lee v. City of Los

9    Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (permitting a court to take judicial notice of another

10   court's opinion, but not the truth of the facts recited therein).

11        Thus, the Court takes judicial notice of the Order Granting Continental's Motion for

12   Summary Judgment, pursuant to Federal Rule of Evidence 201.

13   **III.    DISCUSSION**

14        **A.    Personal Jurisdiction**

15        Legal representation by an out-of-state law firm does not, by itself, establish personal

16   jurisdiction over the law firm in the client's home state. *See Sher v. Johnson*, 911 F.2d 1357, 1363

17   (9th Cir. 1990) ("Out-of-state legal representation does not establish purposeful availment of the

18   privilege of conducting activities in the forum state, where the law firm is solicited in its home

19   state and takes no affirmative action to promote business within the forum state."); *see also King

20   v. Ridenour*, 749 F. Supp. 2d 648, 655 (E.D. Mich. 2010) (holding that the "mere act of agreeing

21   to represent (and then representing) an out-of-state client, without more, does not suffice to

22   demonstrate voluntary purposeful availment" for purposes of personal jurisdiction in the *client's

23   home state).

24        Because Plaintiff does not allege that Defendant is subject to general jurisdiction in

25   California, the Court considers only whether Defendant is subject to specific jurisdiction. The

26   Ninth Circuit Court of Appeals has established a three-prong test for determining whether a non-

27   resident Defendant is subject to specific personal jurisdiction:

28

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

When a case sounds in tort, as this one does, the Court is concerned with whether the defendant has "purposefully directed" its activities at the forum state. This is distinct from the analysis for cases sounding in contract, where the court looks to "purposeful availment." *Schwarzenegger*, 374 F.3d 797, 802-04. Plaintiff bears the burden of proof with regard to the first two elements. *Sher v. Johnson*, 911 F.2d 1357, 1361 (1990). If Plaintiff satisfies the first two elements in *Schwarzenegger*, the burden shifts to Defendant to "present a compelling case" that exercising jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

For the reasons outlined below, the Court finds that Plaintiff has met its prima facie burden to show that Defendant is subject to personal jurisdiction in California.

### 1.    Purposeful Direction

Purposeful direction requires a showing that "[D]efendant's actions outside the forum state [] are directed at the forum." *Schwarzenegger*, 374 F.3d 797, 802-03. This requires the Court to engage in a three-part "effects" test, first articulated in *Calder v. Jones*, 465 U.S. 783 (1984), which entails that Defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*). Failing to sufficiently plead any single element of this test is fatal to a plaintiff's claims. *Cf. Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010). The contacts that constitute purposeful direction "must be the ones that give rise to the current suit." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

United States District Court
Northern District of California

In 2014, the Supreme Court revisited the *Calder* test, and the broader question of minimum contacts, in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). *Walden* involved a *Bivens* action brought by two plaintiffs, both professional gamblers, against a DEA agent based at Atlanta's Hartsfield-Jackson International Airport. The gamblers were traveling through Hartsfield en route from Puerto Rico to Las Vegas, Nevada, with approximately $97,000 in cash. Walden, the DEA agent, confiscated the funds, and the money was not returned to plaintiffs despite their providing documentation that the money was derived from legitimate professional gambling activities. Plaintiffs accused Walden of drafting a false affidavit to show probable cause for the forfeiture, which they alleged was forwarded to the United States Attorney's office in Georgia. *See Walden*, 134 S. Ct. 1115, 1119-20.

The plaintiffs then filed a *Bivens* action against Walden in the District of Nevada, which the district court dismissed for lack of personal jurisdiction. A divided panel of the Ninth Circuit reversed, finding that Walden's actions in Georgia could suffice for the Nevada court to exercise jurisdiction, stating that Walden had "expressly aimed" his submission of the false affidavit at Nevada – because the affidavit would have affected the two plaintiffs, who both were individuals with a significant connection to Nevada. *Id.* at 1120.

A unanimous Supreme Court reversed, finding that Walden lacked sufficient contacts with Nevada for a Nevada court to exercise personal jurisdiction over him. Stating that "the plaintiff cannot be the only link between the defendant and the forum," *id.* at 1122, the Court found that the Ninth Circuit incorrectly "looked to [Walden's] knowledge of [plaintiffs'] strong forum connections," *id.* at 1124, which "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1125. The Court noted that Walden's acts took place in Georgia, and merely caused harm to two individuals who happened to reside in Nevada. Nothing Walden did connected him in any real way with the forum state. The Court thereby held that *Calder* stands for the proposition that "mere injury to a forum resident is not a sufficient connection to the forum," and that courts analyzing personal jurisdiction must engage in a "forum-focused" inquiry. *Id.* at 1125.

Here, Defendant argues that none of its "suit-related conduct was performed in or directed

9

1    toward California," and that the activities it undertook that did touch California were

2    "transactionally unrelated to [Defendant's] actions with respect to the June 2009 rescission of the

3    U.S. Fire policies, [and therefore] cannot be counted in the 'minimum contacts' calculus as 'suit-

4    related conduct.'" (ECF 35 at 4, 5) The Court disagrees.

5        Plaintiff has submitted evidence to the Court that establishes that Defendant has had

6    substantial suit-related contacts with the state of California over the course of more than one year,

7    all in relation to its representation of Vesta and Mr. Terzakis. These forum-related actions of

8    Defendant ultimately give rise to this suit.[2]

9        Commencing in summer 2008, Defendant served as counsel to Vesta, a California

10   corporation, rendering legal advice to the company through at least July 2009 (*See* ECF 22 Exh.

11   12 ¶ 1 ("Murphy & Hourihane, L.L.C., . . . local Illinois counsel for Defendant Vesta Strategies,

12   LLC.")) Although located in Illinois, Defendant's legal work was for the benefit of this California

13   company. (*See, e.g.*, Dillon Decl., ECF 22 Exhs. 13-15 (letters sent from Defendant to unfunded

14   exchangers in an attempt to settle claims the exchangers had against Vesta)) Defendant received

15   fees from its services performed for Vesta, including the disputed $40,000 payment at issue in the

16   present lawsuit, (*see* Hourihane Decl., ECF 10-1 Exh. B; *see also* Dillon Decl., ECF 22 Exh. 14),

17   money that otherwise would have been paid into Vesta's coffers.

18       As set forth below, the Court finds that Plaintiff has met its prima facie burden to show the

19   three elements of the *Calder* test, as further defined by the Supreme Court in *Walden*, and

20   discusses each of these three elements in turn below.

21                        **i.    Commission of an Intentional Act**

22       The *Calder* effects test first requires the Plaintiff to establish that the Defendant committed

23

24   _____

25   [2] Defendant argued, in briefing and at oral argument on the Motion to Certify, that the Court in its
     prior Order "apparently conflate[ed] notions of general and specific jurisdiction" through use of
     the phrase "intentional, substantial, and continuing contact with California over the course of two

26   years." (Def.'s Supp. Brief at 3) To the extent that the Court was unclear that it was only engaging
     in an analysis of the nature of Defendant's suit-related conduct, and not its general contacts with

27   the forum, the Court here reaffirms the principle that a party with substantial forum-related
     contacts, but who is not subject to general jurisdiction in that forum, is subject to specific

28   jurisdiction *only* when its suit-related contacts are sufficient. *See, e.g.*, *Daimler AG v. Bauman*,
     134 S. Ct. 746, 762 (2014).

United States District Court
Northern District of California

United States District Court
Northern District of California

an intentional act. *See Calder*, 465 U.S. 783, 791 (1984); *see also Schwarzenegger*, 374 F.3d 797, 802 (9th Cir. 2004) (stating "[w]e construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world," and finding that researching, writing, editing, and publishing of a story all constituted intentional acts). Defendant does not dispute that it served as counsel to Vesta. That legal representation included a number of intentional acts, including: (1) submission of attorney affidavits in two California cases, including an attorney fault declaration pursuant to California Code of Civil Procedure § 473(b); (2) personally contacting California residents, who were known to be defrauded exchangers, via mailed settlement letters in an attempt to settle disputes against Vesta and avoid the involuntary bankruptcy of the company or criminal charges against its owner, Terzakis, who owed Defendant substantial legal fees (*see, e.g.*, Dillon Decl., ECF 22 Exh. 14 at 2); and (3) accepting $40,000 from the rescission of the U.S. Fire Policies after sending a letter to U.S. Fire where it represented itself as Vesta's counsel. *See* Compl. Exh. 3. Each and every one of these actions suffices as an intentional act for purposes of the first element of the *Calder* test, 465 U.S. 783, 791.

### ii.        Expressly Aimed at the Forum State

Defendant contends that its conduct does not meet the second element of the *Calder* test, because "[t]here is no evidence that [Defendant] committed an intentional act that was expressly aimed at California." (Mot. to Dismiss, ECF 10 at 7) Seemingly confusing its duties for Vesta with its contact with Mr. Terzakis, Vesta's majority shareholder, Defendant argues that all of its work was only related to advising Mr. Terzakis in Illinois, and was not therefore related to the conduct giving rise to this suit. (*Id.*) Defendant's own sworn statements and documents, however, contradict this position.

Defendant has injected itself into two California lawsuits, in one case representing Vesta for a period of time, and in both suits volunteering to be a witness by filing declarations. (*See* Dillon Decl., ECF 22 Exhs. 10, 12) The first case, *Vesta Strategies v. Estupinian*, Case No. C-07-06216-JW, was filed in this court. The second case, *Tesoro Coast, LLC v. Vesta Strategies*, Case No. 30-2008-00108304, was filed in California Superior Court in Orange County, California. Defendant participated in both of these cases in an effort to persuade California courts to rule in

United States District Court
Northern District of California

1  favor of Vesta's requests for relief from default.

2      In *Vesta Strategies v. Estupinian*, Eugene Murphy, a named partner of Defendant,

3  submitted an affidavit in support of Vesta's motion to set aside entry of default judgment. (*See*

4  ECF 22 Exh. 10) In that declaration, Mr. Murphy outlined the substantial efforts he undertook for

5  Defendant in order to assist Vesta in defending itself from suit and in finding suitable counsel. (*Id.*

6  ¶ 10 ("I spent innumerable hours interviewing firms qualified to handle the large number of cases

7  filed for and against Mr. Terzakis and Vesta.")) In the *Tesoro Coast* case, Mr. Murphy submitted

8  an attorney fault declaration, in which he accepted full responsibility for Vesta's failure to file a

9  responsive pleading. (ECF 22 Exh. 12) In fact, Mr. Murphy states in that declaration that "[m]y

10  firm was retained to represent Mr. Terzakis' *and Vesta's interests* in the actions in which Mr.

11  Terzakis and/or Vesta were parties, and to assist with finding local counsel in California for this

12  and numerous other matters." (*Id.* ¶ 4 (emphasis added)) Mr. Murphy goes on to say in this

13  declaration that "I did not, however, file or cause to be filed a response to the Complaint in this

14  matter." (*Id.* ¶ 7)

15      By this declaration, Mr. Murphy invoked the mandatory relief provision of California

16  Code of Civil Procedure § 473(b), whereby upon submission of an "attorney's sworn affidavit

17  attesting to his or her mistake, inadvertence, surprise, or neglect, [the Court shall] vacate any []

18  resulting default." Cal. Civ. Code §473(b). Thus, this declaration evidences Mr. Murphy invoking

19  the law of the forum state in order to protect his client, Vesta, a California company. (*See* Dillon

20  Decl. Exh. 12 ¶ 4 ("My firm was retained *to represent Mr. Terzakis' and Vesta's interests* in the

21  actions in which Mr. Terzakis and/or Vesta were parties.")) The declaration, filed in Orange

22  County Superior Court, is suit-related in that Defendant's representation of Vesta and Mr.

23  Terzakis in this dispute, among its additional legal representation, gives rise to the legal fees and

24  debt incurred by Mr. Terzakis and Vesta, debt for which Defendant, it is alleged in the Complaint,

25  ultimately accepted the $40,000 from U.S. Fire as payment. (*See, e.g.*, Compl. ¶ 10 ("[Defendant]

26  accepted the $40,000 because Terzakis owed it fees.")); *see also Walden*, 134 S. Ct. 1115, 1123

27  ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions

28  or interactions with the plaintiff or other parties."). Moreover, Defendant's actions to protect

United States District Court
Northern District of California

1  Vesta's solvency and freedom from a default judgment would also protect Defendant's *own*

2  *interest* in collecting its fees.

3         In addition to these declarations, Defendant also participated forcefully in settlement

4  negotiations, on behalf of Vesta, with a number of California residents who claimed they lost

5  significant amounts of money when Vesta was looted by Terzakis and Estupinian. Defendant sent

6  strongly worded, almost threatening, settlement letters to California residents seeking monetary

7  settlement of their claims against Vesta, and indicated that such settlements would be rescinded if

8  the claimants filed civil suits or contacted law enforcement authorities regarding their losses. (*See*

9  Dillon Decl., ECF 22 Exh. 13 ("This letter summarizes and sets forth our client's proposal to

10  resolve your claim relating to Vesta Strategies, L.L.C."); Exh. 14 ("This letter is an update to our

11  previous communications regarding *our clients' proposal* to resolve your claim relating to Vesta

12  Strategies, L.L.C. and John Terzakis.") (emphasis added); Exh. 15 ("In an effort to resolve all

13  matters *between yourself and Vesta Strategies* and all other related matters, we hereby propose the

14  following.") (emphasis added))

15         Defendant argues that these settlement negotiation contacts are remote in time and

16  unrelated to the present suit. The Court disagrees. These intentional, forum-related acts are part

17  and parcel of Defendant's alleged conduct of rescinding the insurance policies in order to accept

18  the $40,000 in refunded premiums as payment for past-due legal bills. For example, on July 10,

19  2009, after Defendant received the reimbursement from U.S. Fire in June 2009, it sent a settlement

20  letter to one of the California exchangers,[3] in which it told the exchanger that it had secured

21  collateral for amounts owing to the exchangers, but that "in the event Mr. Terzakis is the subject

22  of additional civil litigation, charged by any authority with a crime arising from or relating to your

23  claim, or should you or any other claimant cause an involuntary bankruptcy to be filed against Mr.

24  Terzakis, the collateral pledge will become null and void." Dillon Decl., ECF 22 Exh. 14 at 2. The

25  Complaint alleges that Defendant received a fraudulent conveyance by virtue of receipt of the

26  $40,000 premium reimbursement. *See, e.g.*, Compl. ¶ 65. This letter shows an attempt by

27  _____

28  [3] According to the "Vesta Claimant Address List," Dillon Decl., ECF 22 Exh. 14 at 3, there are at least twelve California exchangers with claims against Vesta.

United States District Court
Northern District of California

1   Defendant to discourage a party from causing Vesta's involuntary bankruptcy, which would have

2   permitted a Trustee to recover "for the benefit of the bankruptcy estate transfers of the debtor's

3   property made within 90 days of the bankruptcy filing." *Barnhill v. Johnson*, 503 U.S. 393, 395

4   (1992); 11 U.S.C. § 547(b). Such a bankruptcy filing could have permitted a Trustee to recover the

5   $40,000 received by Defendant from U.S. Fire in June 2009. This letter, therefore, sent through

6   the mail to a California exchanger *after Defendant agreed to receive the $40,000 from U.S. Fire*,

7   is inextricably linked to Defendant's alleged intentional receipt of the $40,000 reimbursement as

8   payment for past-due legal fees from Mr. Terzakis, the action giving rise to this suit. *Cf. Walden*,

9   134 S. Ct. 1115, 1122 ("[P]hysical entry into the State . . . through an agent, goods, mail, or some

10  other means – is certainly a relevant contact [for the jurisdictional inquiry].").

11      Unlike in *Walden*, nothing about these suit-related contacts is "random, fortuitous, or

12  attenuated." *Walden*, 134 S. Ct. 1115, 1123. As one court interpreting *Walden* has stated: "In

13  *Walden*, the officer was stationed at the Atlanta airport, and seized a bag that could have been

14  headed anywhere. . . . The officer did not purposefully target Nevada or any Nevada citizen, nor

15  did he intend for any action taken at the Atlanta airport to have consequences in Nevada." *Allianz

16  Global Corp. & Specialty v. Advantage Aviation Techs., Inc.*, 2014 WL 3586556, at *6 (E.D.

17  Mich. July 22, 2014). *Walden* makes clear that the Court must consider Defendant's own

18  intentional, suit-related conduct, and that this conduct must be connected to the forum state, not

19  just to a person who happens to live in the forum state. *Walden*, 134 S. Ct. 1115, 1123 (describing

20  the Supreme Court's analysis in *Calder v. Jones* as "[a]lthough we recognized that the defendants'

21  activities 'focused' on the plaintiff, our jurisdictional inquiry 'focused on the relationship among

22  the defendant, the forum, and the litigation.").

23      Defendant, however, asks this Court to read *Walden* to narrowly focus on the ultimate act

24  constituting the alleged wrongdoing, instead of more broadly evaluating Defendant's suit-related

25  conduct. Defendant argues that the Court should consider only the effects of the rescission of the

26  U.S. Fire Policies for purposes of jurisdiction. *See* Def.'s Reply at 4 ("That leaves only the

27  'effects' allegedly experienced in California by Vesta and, even more attenuated, by Vesta's

28  California-based exchangers, due to the rescission of the U.S. Fire Policies to support this Court's

exercise of *in personam* jurisdiction."). The Court agrees that if the only contact with the forum were the effects of Defendant's rescission on the California exchangers, that such a contact alone would be insufficient for jurisdiction under *Walden*. Murphy & Hourihane, however, did not simply have a one-off, random contact with Vesta and its exchangers – they served as counsel for Vesta and Mr. Terzakis, including in California courts, for which they incurred fees; they allegedly invoked the protection of California's laws for the benefit of their client and themselves (to protect their ability to collect legal fees); they received money from the rescission of the insurance policies that otherwise would have gone into Vesta's coffers or to California exchangers; and they sent settlement letters to those California exchangers, encouraging them not to force Vesta into involuntary bankruptcy, which could have resulted in a Trustee taking back the $40,000 that had been paid out to Defendant. This was a significant personal services relationship that involved intentional contact, in multiple forms and over a prolonged period of time, between Defendant and California. *Cf. Havel v. Honda Motor Europe, Ltd.*, 2014 WL 4967229, at *9-10 (S.D. Tex. Sept. 30, 2014) (slip op.) (finding the holding in *Walden* inapplicable in a case where a defendant purposefully contacted individuals in the forum state through the phone and mail). Defendant engaged in multiple intentional acts that were expressly aimed at California, and Plaintiff has made a sufficient showing under the second element of the *Calder* effects test.

### iii. Causing Harm Likely to be Suffered in the Forum State

*Calder's* third element requires the plaintiff to show that the defendant "caused harm that the defendant knows is likely to be suffered in the forum state." *Dole Food*, 303 F.3d 1104, 1111. After receiving U.S. Fire's May 28, 2009 letter rescinding the insurance policies, Defendant sent a responsive letter on June 1, 2009. (Compl. Exh. 3) In this letter, Mr. Hourihane instructs U.S. Fire to pay out its refund of the insurance policy premiums *directly to Defendant*. (*Id.* ("Enclosed with this letter is a letter of direction from Vesta accepting the rescission of and refund of the policy premiums for the subject policies. Pursuant to Vesta's instructions, the refund may be paid by check payable to 'Murphy & Hourihane, L.L.C.'")) This document makes a prima facie showing that Defendant, despite knowing that Vesta was suffering from low funds as a looted company, intercepted $40,000 that otherwise would have been paid out directly to Vesta. The Court finds

15

1  that Defendant would have "known it likely" that this act would have caused harm likely to be

2  suffered by its California client, *see Dole Food*, 303 F.3d 1104, 1111, and the unfunded

3  exchangers, many of whom are California residents.

4       This Court is mindful that the Ninth Circuit, in *Sher v. Johnson*, 911 F.2d 1357 (9th Cir.

5  1990), has held that out-of-state legal representation does not, in-and-of-itself, establish purposeful

6  availment of the privilege of conducting business in the forum state. *Sher*, 911 F.2d 1357, 1363.

7  However, the evidence in this case shows far more than mere out-of-state legal representation

8  conducted by Defendant. In *Sher*, Florida attorneys, representing a California client in litigation

9  before a Florida court, sent letters and bills to California, and traveled to the state several times to

10  meet their client. *Id.* However, these acts, standing alone, were not enough for personal

11  jurisdiction over the out-of-state lawyers. It was only after the lawyers obtained a deed of trust on

12  California real property, in order to secure payment of their legal bills, that the lawyers "invoked

13  the benefits and protections of the laws of California for the purposes of jurisdiction." *Id.* at 1364

14  (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 479).

15       In this case, Defendant was providing legal services to a California company in courts *in*

16  *California*, not an out-of-state forum. The Complaint includes allegations of self-dealing by the

17  attorneys in diverting money to themselves when they were aware that California exchangers had

18  been defrauded through a purported $20,000,000 Ponzi scheme. *See, e.g.*, Compl. ¶¶ 7, 48, 56, 61,

19  65. Altogether, Defendant's representation of Vesta in at least one state court case relating to the

20  actions giving rise to this suit, its submission of declarations to two California courts stating that it

21  was counsel to Vesta, and its interception of the $40,000 paid to Vesta as reimbursement for the

22  cancelled insurance policies, establish personal jurisdiction.

23       This case is analogous to *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310 (9th Cir. 1987), in

24  which the Ninth Circuit found that a Kansas accountant, engaged in providing Kansas-based

25  accounting services to a California medical practice, was properly subject to jurisdiction in

26  California because of his "ongoing performance of accounting services for a California

27  enterprise." *Palka*, 823 F.2d 310, 314. Defendant's suit-related contacts with California show this

28  same type of ongoing personal services relationship, and more than suffice for this Court to

1    exercise personal jurisdiction over Defendant. *See Walden v. Fiore*, 134 S. Ct. 1115, 1126 ("The

2    proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among

3    the defendant, the forum, and the litigation.'") (citing *Calder v. Jones*, 465 U.S. 783, 788).

4          The Supreme Court, in deciding *Walden*, reinforced the validity of the *Calder* effects test,

5    admonishing courts to analyze the effects of an action by a defendant in relation to the forum state,

6    not merely in relation to a plaintiff that happens to live in that forum state. *See id.* at 1122. Here,

7    Defendant caused harm which it knew would affect California residents and a California company.

8    It did not simply cause harm to a person who by chance happened to live in California. This is not,

9    like *Walden*, a case of happenstance. It is a case of clear and substantial suit-related interaction

10   between a Defendant and the state of California, based on the actions undertaken by the Defendant

11   through the services it provided to Vesta and Mr. Terzakis.

12         The Court finds that Plaintiff has made a prima facie showing of the elements of the three-

13   factor *Calder* test, in a manner consistent with the Supreme Court's recent revisiting of personal

14   jurisdiction jurisprudence in *Walden*.

### 2.    Arising Out of Forum-Related Activities

16         The second prong of *Schwarzenegger's* specific jurisdiction inquiry requires that the

17   "claim asserted in the litigation arises out of the defendant's forum related activities." *Panavision*

18   *Int'l, Inc. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Cubbage v. Merchant*, 744 F.2d 665,

19   670 (9th Cir. 1984) ("Appellant's claim must arise out of or result from appellees' forum-related

20   activities."); *see also Burger King Corp v. Rudzewicz*, 471 U.S. 462, 473 ("[T]he constitutional

21   touchstone remains whether the defendant purposefully established minimum contacts *in the*

22   *forum*."); *Walden*, 134 S. Ct. 1115, 1125 ("The proper question is . . . whether the defendant's

23   conduct connects him to the forum in a meaningful way.").

24         Here, Plaintiff's claims clearly arise out of Defendant's forum related activities. Plaintiff

25   alleges that Defendant wrongly took $40,000 as payment for outstanding bills from the money

26   remitted by U.S. Fire. Plaintiff provides the Court with settlement letters, sent to California

27   through the mail by Defendant, both before and after Defendant's acceptance of the $40,000

28   payment. The Complaint plainly alleges that Murphy & Hourihane intercepted this $40,000 as

United States District Court
Northern District of California

United States District Court
Northern District of California

1  payment for fees owed, *see, e.g.*, Compl. ¶ 64, including fees incurred based on representation in

2  California courts, at a time when it was fully aware that the two principals of Vesta, Terzakis and

3  Estupinian, had been charged with looting Vesta of tens of millions of dollars, causing Vesta to be

4  sued by many of its clients and making Vesta unable to meet its financial obligations. (*See, e.g.*,

5  Hourihane Decl. Exh. A (Letter from U.S. Fire); *see also* Mot. to Dismiss at 7-8 ("Defendant

6  intended to assist Mr. Terzakis from Illinois with the sale of his assets in order to pay back the

7  money stolen from Vesta."))

8     The receipt of these funds arises out of Defendant's suit-related contacts with California,

9  and had the effect of injuring Vesta and other forum residents in California. As such, Plaintiff has

10  made a prima facie showing of the second prong of the *Schwarzenegger* test.

11           **3.     The Exercise of Jurisdiction Would Be Reasonable**

12     Defendant bears the burden, after Plaintiff has made a showing of the first two prongs of

13  the *Schwarzenegger* test, of proving that the exercise of jurisdiction by the Court would be

14  unreasonable. Courts in the Ninth Circuit consider a seven-factor balancing test when addressing

15  the question of reasonableness:

16           (1) the extent of a defendant's purposeful interjection; (2) the burden
             on the defendant in defending in the forum; (3) the extent of conflict
17           with the sovereignty of the defendant's state; (4) the forum state's
             interest in adjudicating the dispute; (5) the most efficient judicial
18           resolution of the controversy; (6) the importance of the forum to the
             plaintiff's interest in convenient and effective relief; and (7) the
19           existence of an alternative forum.

20  *Panavision*, 141 F.3d 1316, 1323 (citing *Burger King*, 471 U.S. 462, 476-77). The Court considers

21  each of these factors in turn, and finds that Defendant has not met its burden to prove that the

22  exercise of jurisdiction would be unreasonable.

23                    **i.     Purposeful Interjection**

24     Even if a court finds sufficient interjection into the forum state to satisfy the test for

25  purposeful availment, "the degree of interjection is a factor to be weighed in assessing the overall

26  reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d 1316, 1323.

27  In *Panavision*, the Court found that the out-of-state registration of a trademark, "knowing that [it]

28  would likely injure Panavision in California," and the sending of a settlement demand letter to

18

California, weighed "strongly in favor" of the exercise of personal jurisdiction. In the instant case, the degree of interjection by Defendant is even stronger: Defendant sent numerous settlement letters to Vesta's unfunded exchangers in California, filed declarations in multiple California courts, and intercepted money that otherwise would have been deposited in the coffers of a California corporation. These interjections are extensive, and weigh heavily in favor of the exercise of jurisdiction.

### ii.    Defendant's Burden

In weighing a defendant's burden in litigating in the forum, unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995). In *Panavision*, the court held that there was a "significant" burden on an individual living in Illinois having to litigate in California, but that such a burden was not constitutionally unreasonable given technological advances in travel and communications. 131 F.3d 1316, 1323. Defendant argues that their burden will be particularly great, due to "the rigorous litigation schedules that they must uphold in Illinois," (Mot. to Dismiss at 10), but articulates no reason why such a burden would be so great as to deprive them of due process.

### iii.    Sovereignty

The sovereignty analysis "concerns the extent to which the exercise of jurisdiction would conflict with the sovereignty" of Illinois. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Defendant provides no argument as to how the exercise of jurisdiction by a California court in this matter would impinge upon the sovereignty of Illinois, and this Court does not find any conflict of law that would be implicated by the exercise of jurisdiction in California in this case.

### iv.    Forum State's Interest

Defendant argues that California "does not have an interest in adjudicating this dispute." (Mot. to Dismiss at 10) However, the Ninth Circuit has held that "California has an interest in protecting its citizens against legal malpractice, regardless of where the malpractice occurs." *Sher*, 911 F.2d 1357, 1364-65 (finding that both California and Florida had an interest in a malpractice

19

action concerning a Florida-based law firm and California resident in litigation before Florida courts). Though Illinois undoubtedly has an interest in the actions taken by lawyers admitted to its bar, California's interest in protecting its citizens from malpractice is similarly compelling.

Further, California has a substantial interest in adjudicating tort claims that directly impact its own residents. *See Corp. Inv. Business Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987) ("In examining a forum state's interest in adjudicating a dispute, the question is whether the forum state is concerned with the outcome of the litigation."); *see also Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1401-02 (9th Cir. 1986). This case includes the interest of at least twelve California exchangers, *see* Dillon Decl. Exh. 14 at 3-4, who the Complaint alleges are owed "at minimum, $10 million;" money allegedly stolen from Vesta, a California company. Compl. ¶ 6. California's interest in providing its own citizens a forum to seek monetary redress on tort claims is a paramount one. *See, e.g.*, *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988) ("California maintains a strong interest in providing an effective means of redress for its residents [who are] tortuously injured.").

### v.     Efficient Resolution

This factor "focuses on the location of the evidence and witnesses," but is "no longer weighed heavily given the modern advances in communication and transportation." *Caruth*, 59 F.3d 126, 129. Though Defendant's "attorneys, employees, and documents are located in Illinois, and any third-party witnesses from U.S. Fire are likely located in New Jersey," (Mot. to Dismiss at 11), Vesta contends that its files and witnesses are located in California, (Opp. to Mot. to Dismiss at 16), as is the Plaintiff, who was appointed as Receiver by this court. (*See, e.g.*, *id.* at 17) The Court finds that California is an efficient forum in which to litigate the matter.

### vi.     Convenient and Effective Relief for Plaintiff

Courts "give[] little weight to the plaintiff's inconvenience" when evaluating the convenience and effectiveness of relief. *Panavision*, 141 F.3d 1316, 1324 (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476). However, convenience as a factor augurs in favor of retaining this case in California, as Plaintiff was appointed Receiver here and resides here.

United States District Court
Northern District of California

### vii.    Existence of Alternative Forum

Plaintiff does not dispute that he could have brought this case in Illinois court. (Opp. to Mot. to Dismiss at 18). That an alternative forum exists weighs in favor of Defendant's Motion. *See Panavision*, 141 F.3d 1316, 1324.

Ultimately, most of the seven *Panavision* factors weigh in favor of maintaining jurisdiction in California. Defendant has not met its burden to show that the exercise of jurisdiction by California would be unreasonable. The Court finds that exercising jurisdiction in this case comports with "fair play and substantial justice," *Burger King*, 471 U.S. 462, 476, and as such DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

### C.    Transfer

Defendant asks the Court, in the event that it denies the motion to dismiss, to transfer the action to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) grants a court broad discretion to transfer an action "to any other district or division where it might have been brought . . . for the convenience of parties and witnesses . . . and in the interest of justice." Normally, however, courts award "great weight" to a Plaintiff's choice of forum. *See, e.g.*, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). The Defendant bears the burden of proving that the alternative state is a "more appropriate forum for the action." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

In adjudicating a Motion to Transfer Venue, the Court engages in a two-part analysis. First, the Court must determine if the action could have been brought in the venue to which transfer is sought. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). In this case, both parties agree that the case could have been brought in the Northern District of Illinois. (*See* Opp. to Mot. to Dismiss at 18 ("Dillon concedes that he could have sued [Defendant] in Illinois.")) Second, the Court must consider three factors: "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice." *Kasey v. Molybdenum Corp.*, 408 F.2d 16, 20 (9th Cir. 1969).

### 1.    Convenience of the Parties

The Court finds that the present forum best serves the convenience of the parties. Plaintiff

United States District Court
Northern District of California

1   is resident here, and was appointed Receiver by the court here. Vesta has its principal place of

2   business in this district. Defendant, though resident in Illinois, has filed papers with the courts in

3   this district before. (*See* Dillon Decl., ECF 22 Exh. 10) The Court does not doubt that it would be

4   more convenient for Defendant to litigate in Illinois. The Court must, however, balance the

5   possible increase in costs facing Defendant if forced to litigate in California against the decrease in

6   costs for it, but increase in costs facing Plaintiff, if the case were transferred. *See Mobil Oil Corp.*

7   *v. W.R. Grace & Co.*, 334 F. Supp. 117, 124 n.5 (S.D. Tex. 1971) (finding that costs that must be

8   borne by the parties "directly bears upon the convenience of the parties"). An additional concern

9   for the Court is that Plaintiff, as Receiver, has an obligation not to waste estate assets, and states

10  that he brought suit in California "because litigation here will save the estate money." (Opp. to

11  Mot. to Dismiss at 18-19). Further, any depositions of Defendant's attorneys would need to take

12  place in Illinois, as conceded by Plaintiff, (*Id.* at 19 ("Dillon will have to depose Murphy &

13  Hourihane personnel in Chicago.")), the increase in costs related to traveling back and forth

14  between jurisdictions are costs that would have to be borne by *either* party, whether the case

15  remains in this venue or is transferred. As such, the Court does not find any substantial increase in

16  costs facing Defendant so as to support transfer.

17           **2.**        **Convenience of the Witnesses**

18         The convenience of witnesses "is said to be the most important factor in passing on a

19  transfer motion." *Los Angeles Mem. Coliseum Commission v. NFL*, 89 F.R.D. 497, 501 (1981)

20  (citing 15 Wright, Miller & Cooper at 264 ("If the forum chosen by plaintiff will be the most

21  convenient for the witnesses, this is a powerful argument against transfer.")).

22         Both parties agree that some critical witnesses – including employees of U.S. Fire – are

23  likely not resident in either Illinois or California. However, the number of witnesses in California

24  weighs strongly in favor of keeping the litigation here. Plaintiff describes several groups of

25  witnesses resident in California, including: "non-wrongdoing employees" of Vesta, Mr.

26  Estupanian's wife, and Peter Ye, a former employee who is currently incarcerated. (Opp. to Mot.

27  to Dismiss at 19) Defendant points to no witnesses, apart from its own employees, that are resident

28  in Illinois. (*See, e.g.*, Mot. to Dismiss at 15) The Court believes it will be more convenient for the

greatest number of witnesses were the litigation to remain in California.

### 3.    Interest of Justice

In determining whether a transfer is in the interest of justice, courts consider a wide variety of factors. The Ninth Circuit has articulated eight factors that a court may choose to consider in making this determination:

> (1) [T]he location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). In assessing the various *Jones* factors, "no single factor is dispositive." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In the instant case, only one of the *Jones* factors weighs strongly in favor of transfer: that the agreements between Defendant and Terzakis were negotiated in Illinois. (*See* Hourihane Decl., ECF 10-1 ¶ 10) However, the remaining *Jones* factors are either neutral to the question of transfer, or weigh in favor of retaining the litigation in California. First, as Plaintiff argues, its claims against Defendant sound in California Insurance law (Opp. to Mot. to Dismiss at 18), specifically California Insurance Code § 533, about which California courts will have greater familiarity than will Illinois courts. Second, Plaintiff elected to bring suit in California, not Illinois. Third, both parties have contacts with California as a forum, both generally and with regard to the causes of action in this suit: Plaintiff is the court-appointed Receiver and resident in California, while Defendant provided legal services for a California client, including before California courts. Defendant argues that it has "no contacts with California" (Mot. to Dismiss at 14), but this claim is simply not believable considering the evidence before the Court. Given that Plaintiff lacks contacts with Illinois, that both parties have substantial contacts with California augurs in favor of retaining the case in the present forum. Fourth, though Defendant argues that its costs will be heavier to litigate in California than they would be in Illinois (Mot. to Dismiss at 15), the converse

is true for Plaintiff – Plaintiff's costs will be higher if litigating in Illinois than they would be in California. Additionally, as court-appointed Receiver, Plaintiff has an obligation to not "waste . . . estate assets" (Opp. to Mot. to Dismiss at 18), which encourages the Court to permit suit in the more cost-effective forum. Fifth, Defendant agrees that compulsory process is "[e]qually [a]vailable in Illinois." (Mot to Dismiss at 15) Sixth, and finally, the Court believes that neither state affords a greater access to sources of proof. Though Defendant is resident in Illinois, it concedes that other witnesses are disbursed throughout the country (Vesta depositors) or likely to be resident in New Jersey (U.S. Fire employees). (*Id.*) Plaintiff's witnesses, including at least two of Vesta's former employees, are residents of California. (Opp. to Mot. to Dismiss at 19)

Having considered the *Jones* factors, the Court finds that only one of the eight factors weighs in favor of transferred in the case to Illinois, while the remaining factors weigh in favor of retaining the case in California, or are neutral.

Defendant has not met its burden to prove that Illinois is a more appropriate forum than California for the adjudication of this dispute. Rather, it has simply shown that Illinois is an *additional* appropriate forum. This is not enough for the Court to override the Plaintiff's choice of California as a forum for the litigation, and as such the Court DENIES Defendant's Motion for Transfer of Venue.

## IV.    ORDER

For the foregoing reasons, the Court, following reconsideration, DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, and DENIES Defendant's Motion for Transfer of Venue.

**IT IS SO ORDERED.**

Dated: October 22, 2014

HON. BETH LABSON FREEMAN
United States District Judge